GRAVES, &c.
vs.
ALLAN, &c.

*Hord*, for appellant; *Dulin & Cavan*, for appellee.

CHANCERY.

Case 11.

June 16.

## Graves, &c. vs. Allan, &c.

### ERROR TO CLARKE CIRCUIT.

Judge MARSHALL delivered the opinion of the court.

1. Slaves in Kentucky cannot become the legal owners of property, though they may, with the assent of their masters, have the physical possession and use thereof. They cannot contract in their own right. Any right growing out of their contracts belongs to the master. Slaves cannot take as legatees, nor can the owner take any thing by virtue of a devise to his slave.
2. Any devise to a slave, except that of freedom, is void. So is a devise in trust for the benefit of a slave. (4 *De Saus.* 266; *Cameron & Norwood, N. C. Rep.* 353.)

Case stated.

Charles Allan (a free man of color,) having by his last will, which has been duly recorded, made divers bequests to certain slaves named therein, most of whom he recognizes as his children, and others as the mothers of those children, this bill was filed by the owner of some of these slaves against the executor of Allan, claiming the money bequeathed to his slaves, and praying for an account of the estate and of the acts, &c., of the executor—the representatives of Rice Arnold, who had been the owner of most of the other slaves named as legatees, being parties concerned in the object and prayer of the bill. A demurrer to the bill was overruled. But answers having been filed, the bill was dismissed on final hearing, and the case having been brought to this court, the only question presented for our consideration is, whether the owners of these slave legatees are entitled to any relief.

The will provides that, in case of difficulty with any of the legatees, B. F. Graves is authorized to receive for his slaves their equal share, and Rice Arnold's executor to receive the share for his slaves. But neither Graves nor the other claimants make any reference to this provision as the ground of their claim, or make any recognition of the duty on their part, or of the right on the part of the slaves, to have the will carried out for the benefit of the slaves, for whom alone the testator intended that their owners should receive the legacies. The claimants assert a right to the legacies, not as trustees for the benefit of their respective slaves, which would itself be an anomaly, but as owners of the legatees, and as therefore being entitled to the legacies themselves, absolutely, and as their own.

This claim, if traced to its source, will be found to be inconsistent with the very principle on which it is founded. If a slave could acquire property and be in the legal sense its owner, it would not be true that whatever the slave has or may acquire belongs to his owner. It is because the law does not recognize nor admit of the right of a slave to be the owner of property, that all his acquisitions vest in his owner. If he could have a legal right to that which is even in his actual possession, the ownership, that is the right as well as the possession, would be in him and not in his owner. And if he could hold property as his own, he would thus far be independent, and would, in fact, cease to be a slave in the sense in which slavery exists by law and usage in this country.

Undoubtedly a slave is capable, as suggested, of enjoying property, that is, he may have the physical possession and use of it; and by the indulgence or license of their owners, slaves do in fact often acquire this physical possession and enjoy the physical use of property. But their possession and whatever right accompanies it, is, in law, the possession and right of their owners, by whose sufferance or indulgence alone they are permitted to have the actual en-

GRAVES, &c.
*vs.*
ALLAN, &c.

1. Slaves in Kentucky cannot become the legal owners of property, tho' they may, with the assent of their masters, have the physical possession and use thereof. They cannot contract in their own right. Any

right growing out of their contracts belongs to the master. Slaves cannot take as legatees, nor can the owner take any thing by virtue of a devise to his slave.

joyment of it. They are incapable of contracting in their own right, and if they may be capacitated by authority from their owners, any right growing out of such contract, whether in possession or in action, vests not in them but in their owners. Although a slave may receive the possession, he cannot hold property. He cannot hold or receive the right of property in any degree. He is, in law, incapable of receiving or holding any such right. He is absolutely incapable of taking it, and therefore cannot be a devisee or legatee. And his owner can claim nothing under a devise or legacy to him, because thereby nothing could pass but a mere right, and the slave being incapable of receiving a right, nothing whatever can pass. As the slave acquires no right by the devise, the owner acquires nothing by the principle that the acquisitions of the slave belong to his owner. And as this right of the owner arises from the very fact that the slave can acquire no right himself, the assumption that the slave acquires a right by the devise to him defeats the ground of the owner's claim; unless, indeed, it could be said that a devise to a slave is in effect a devise to his owner, which would be an inadmissible perversion of the words and plain intention of the testator.

2. Any devise to a slave, except that of freedom, is void. So is a devise in trust for the benefit of a slave. (4 De Saus. 266; Cameron & Norwood, N. C. Rep. 353.)

Then, as a slave cannot take under a devise or bequest, he is in fact incapable of being a devisee or legatee, and any devise or bequest to him, except that of freedom, must be void, and of course unenforceable. For substantially the same reasons a devise in trust for the benefit of a slave is alike void. As he is incapable of taking the benefit intended, the trust cannot be enforced. Besides, a devise of property in trust for the benefit of a slave is, in substance, a devise to the slave, and is equally inconsistent with the principles and policy which determine the incapacity of a slave to hold property. And as it is entirely clear that the testator in this case intended no benefit to the owners of the slaves, who were the objects of his bounty, there seems to be no plausible

reason for placing the sums bequeathed in the hands of the owners of the legatees, even if they had suggested a difficulty on the part of the executor in carrying out the will, or a desire on their own part to do so.

We have not deemed it necessary to discuss the policy which has fixed the condition of slavery in this state, and which prescribes the negation of all legal rights of property to slaves. We assume these principles as recognized by common consent and as necessarily incident to the institution of slavery as it exists among us. They are sanctioned by the cases of *Bynum* v. *Bostwick*, 4 *De Saus. Rep.* 266, of *Cunningham's heirs* v. *Cunningham's executors, Cameron & Norwood's N. C. Rep.* 353, and other cases in different states, and also by the adjudications of this court with respect to the incapacity of slaves to contract or hold property.

What is to be done with the estate attempted to be disposed of by this will, is not now a question before us.

Wherefore the decree dismissing the bill is affirmed.

*Hanson,* for plaintiff; *Allan,* for defendants.